UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO – WESTERN DIVISION
AFFIDAVIT IN SUPPORT OF ARREST WARRANT

I, Michelle Gentzsch, being first duly sworn, hereby depose and state as follows:

**Introduction and Background**

1. I am a Border Patrol Agent (BPA) with the United States Border Patrol (USBP), Department of Homeland Security, duly appointed according to law, and assigned to the Sandusky Bay Border Patrol Station in Port Clinton, Ohio. I have extensive experience investigating both criminal and administrative violations of immigration law under Titles 18 and 8 of the United States Code.

2. I am familiar with the information contained in this affidavit based on my own personal participation in the investigation, my review of documents and evidence, and conversations I have had with law enforcement agents and other individuals. Because this affidavit is submitted for the limited purpose of establishing probable cause, I have not included herein the details of every aspect of the investigation. Where actions, conversations and statements of others are related herein, they are related in substance and in part, except where otherwise indicated.

3. I make this affidavit in support of an arrest warrant for Nestor Alfredo FIGUEROA-Murillo (hereinafter FIGUEROA). This affidavit sets forth that there is probable cause to believe that FIGUEROA has committed acts constituting violations of Title 8, United States Code, Section 1324(a)(1)(A)(ii) (Transportation of Aliens Not Lawfully in the United States). The elements of the offense are as follows:

| | |
|---|---|
| First: | the transported person was an alien; |
| Second: | the transported person entered the United States in violation of the law; |
| Third: | the defendant knew, or recklessly disregarded the fact, that the transported person was not lawfully in the United States; |
| Fourth: | the defendant knowingly transported the transported person within the United States; and |
| Fifth: | the defendant's transportation of the transported person was in furtherance of the transported person's violation of the law – (e.g. the illegal alien's continued illegal presence in the United States) |

**Probable Cause**

4. On January 24, 2023, Border Patrol Agent (BPA) Tim Nickell and Supervisory Border Patrol Agent (SBPA) William Stack were performing patrol duties at the eastbound Service Plaza located near mile marker 100 of the Ohio Turnpike, in Sandusky County, Ohio. BPAs have previously detected undocumented alien presence and trafficking at this location. At approximately 2:05 a.m., BPA Nickell and SBPA Stack observed a silver 2016 GMC Yukon bearing Texas license plates pull into the service plaza. Once the vehicle parked, the driver and front seat passenger exited the GMC Yukon and started to walk towards the plaza. As they walked, both individuals looked towards the direction of the two marked Border Patrol vehicles, paused, and stared at the agents that were parked at the plaza. At that point, instead of walking towards the plaza, the driver went back to the GMC Yukon's driver side window. The driver then leaned in and appeared to speak with an occupant seated in the rear of the vehicle. The driver and front seat passenger then proceeded to walk back towards the service plaza.

5. SBPA Stack ran records checks on the Texas license plates, which revealed that the registered owner, F.A.F., was a citizen of Honduras who had been previously convicted of Illegal Entry in violation of Title 8, United States Code, Section 1325 on September 22, 2016. Meanwhile, the driver and front seat passenger returned to the GMC Yukon. The driver proceeded to drive the Yukon towards the service plaza exit and continue eastbound on the Ohio Turnpike. As BPA Nickell drove towards the Yukon, SBPA Stack continued record checks and then relayed to BPA Nickell via the service radio that F.A.F. was a citizen of Honduras previously deported from the United States. Due to the results of the records checks, at approximately 2:30 a.m., BPA Nickell activated his emergency equipment and performed a traffic stop on the GMC Yukon near mile marker 109.5 on the Ohio Turnpike in order to conduct an immigration inspection.

6. The GMC Yukon pulled over and BPA Nickell identified himself as a United States Border Patrol Agent. BPA Nickell questioned the driver as to his citizenship, and the driver stated that no one in the vehicle spoke English. BPA Nickell proceeded in the Spanish language. The driver, later identified as Nestor FIGUEROA-Murillo, stated he was a citizen and national of Honduras. When asked if he had any immigration documents, FIGUEROA admitted to being in the United States illegally and stated that everyone in the car was also illegally present. FIGUEROA was asked by BPA Nickell to shut the vehicle off and was subsequently placed under arrest.

7. After BPA Nickel secured FIGUEROA in his marked vehicle, all six occupants freely admitted to being illegally present in the United States without any proper documentation. While BPA Nickell was waiting for additional transportation of the six occupants, BPA Nickell attempted to turn the GMC Yukon back on to keep the occupants warm due to the frigid temperatures that morning. BPA Nickell was unsuccessful in turning on the vehicle. BPA Nickell questioned

FIGUEROA as to why the vehicle would not start. FIGUEROA stated that there was a special process to start the vehicle. FIGUEROA gave guidance on how to start the vehicle, which included utilizing an accessory mode, a fuse box, and an aftermarket button. BPA Nickell recognized that this is a tactic that human smugglers use to ensure that the occupants do not take control of the vehicle.

8. FIGUEROA and all other occupants of the vehicle were subsequently transported to the Sandusky Bay Border Patrol Station for further processing. While processing, the occupants were interviewed by Spanish-speaking BPAs, and stated the following:

   a. One of the passengers, Esteban PEREZ-Vega, stated that he was a native and citizen of Ecuador. He paid a female smuggler $10,000 to get smuggled into the United States. In late January, he crossed the border near Juarez, Mexico. PEREZ-Vega illegally crossed the border with the aid of a smuggler and made his way to another driver that put him in the back of a pick-up truck. PEREZ-Vega stated he was in the bed of the pick-up for roughly 11 hours with only a blanket on him while the driver of that vehicle drove erratically. That night, Perez-Vega stated he was put into a car with a blanket on his head and transported to Chicago. Upon arrival in Chicago, PEREZ-Vega stated that he was left at a gas station where a GMC Yukon was parked at a gas pump. PEREZ-Vega stated that the guy who was pumping gas into the Yukon was the driver, FIGUEROA. PEREZ-Vega approached FIGUEROA, and FIGUEROA asked PEREZ-Vega if he had any money. PEREZ-Vega stated he did not have any money and FIGUEROA said they could talk about making payments later. PEREZ-Vega stated he made arrangements with his cousin Gabriella to bring $1,000.00 cash to New Jersey where PEREZ-Vega would be picked up.

   b. Another passenger, Cristian QUEZADA-Molina, also stated he was a native and citizen of Ecuador. On January 4, 2023, he crossed the border near Juarez to El Paso, Texas, after which he was transported to a hotel. QUEZADA-Molina stated he paid $5,000 to a man in Mexico to bring him across. QUEZADA-Molina was then transported to Albuquerque where he spent a day before being transported to Chicago. QUEZADA-Molina stated he met the other individuals in the car for the first time in Chicago. QUEZADA-Molina stated that he stayed at a hotel in Chicago for about 15 days and he paid an individual from his trip from Albuquerque to Chicago $600 to get the room for him. QUEZADA-Molina stated that the driver was the only occupant of the vehicle when he was picked up in Chicago and that they then picked up the other individuals and headed towards his destination of Brooklyn, New York. QUEZADA-Molina stated he did not pay or make any arrangements to pay the driver for the ride to New York. When asked if the driver knew if

QUEZADA-Molina was illegally present in the United States, QUEZADA-Molina stated that he did not think so.

   c. Another passenger, Erick SANCHEZ-Yunga, also stated he was a native and citizen of Ecuador. On January 15, 2023, SANCHEZ-Yunga crossed the border near Juarez and was transported to El Paso. After spending two days in El Paso, SANCHEZ-Yunga stated that he was transported with four other people to Albuquerque, New Mexico. SANCHEZ-Yunga stated that he then took a bus to Chicago, Illinois where he stayed at a hotel. SANCHEZ-Yunga stated that he met a man at a Chinese restaurant where he was offered a ride. SANCHEZ-Yunga stated that the man offered to take him to New Jersey. SANCHEZ-Yunga stated that he agreed to pay the man $60.00 once he arrived in New Jersey. When asked if SANCHEZ-Yunga gave the driver any money, he stated "not yet".

9. Record checks conducted at the Sandusky Bay Border Patrol Station indicated that none of the occupants of the vehicle driven by FIGUEROA were legally present in the United States.

10. Based upon the above information, there is probable cause that Nestor Alfredo FIGUEROA-Murillo has violated the following federal criminal law:

   a. 8 U.S.C. § 1324(a)(1)(A)(ii) (Transportation of Aliens Not Lawfully in the United States).

The information contained in this Affidavit is true and correct to the best of my knowledge and belief.

_____
Michelle C. Gentzsch
Border Patrol Agent
Sandusky Bay Station
United States Border Patrol

Sworn to via telephone on this  27  day of January, 2023
after submission by reliable electronic means.
Fed R. Crim. P. 4.1 and 41(d)(3)

_____
Darrell A. Clay
United States Magistrate Judge